## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ROSS D. VIGRAN<br>Individually and on behalf of<br>all others similarly situated<br><br>   Plaintiff,<br><br> vs.<br><br>PORSCHE CARS NORTH AMERICA<br>INC.<br>One Porsche Drive<br>Atlanta, Georgia 30354<br><br>Also Serve Statutory Agent:<br>CT Corporation System<br>1300 East 9th Street,<br>Cleveland, Ohio 44114<br><br>and<br><br>PORSCHE FINANCIAL<br>SERVICES, INC.<br>4343 Commerce Court, Suite 300<br>Lisle, Illinois 60532<br><br>  Also serve at address<br>  One Porsche Drive<br>  Atlanta, Georgia 30354<br><br>Also Serve Statutory Agent:<br>CT Corporation System<br>1300 East 9th Street,<br>Cleveland, Ohio 44114<br><br>and | Case No. 15-CV-710<br><br>Judge _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

PORSCHE AG     )
Serve Agent:     )
Porsche Cars North America, Inc. )
One Porsche Drive    )
Atlanta, Georgia 30354   )
           )
and         )
           )
VOLKSWAGEN AG    )
Serve Agent:     )
Volkswagen Group of America, Inc. )
2200 Ferdinand Porsche Drive  )
Herndon, Virginia 20171   )
           )
and         )
           )
ROBERT BOSCH LLC   )
38000 Hills Tech Drive   )
Farmington Hills, MI 48331  )
           )
Also Serve Statutory Agent:  )
Corporation Service Company  )
50 W. Broad Street, Suite 1800  )
Columbus, Ohio 43215   )
           )
   and       )
           )
ROBERT BOSCH GmbH   )
Serve Agent:     )
ROBERT BOSCH LLC   )
38000 Hills Tech Drive   )
Farmington Hills, MI 48331  )
           )
    Defendants.   )

## I.  **INTRODUCTION**

Now comes Plaintiff, Ross D. Vigran ("Vigran"), on behalf of himself and all others similarly situated ("Class Members") and for Plaintiff's Class Action Complaint against each of the above captioned Defendants avers and states as follows:

1766.0003.3.2

This consumer fraud case is based on Defendants Porsche AG ("Porsche"), Porsche Cars North America, Inc. ("Porsche North America") (Porsche and Porsche North America are from time to time referred collectively as "Porsche"), Porsche Financial Services, Inc. ("Porsche Financial"), Volkswagen AG ("VW"), Robert Bosch GmbH ("Bosch") and Robert Bosch, LLC ("Bosch LLC") ("Bosch and Bosch LLC are from time to time referred collectively as "Bosch") acting in concert to commit unfair, deceptive and unconscionable trade practices by selling, financing and/or leasing through Porsche Financial cars that Class Members thought complied with Porsche's representations and warranties and with national, state and local laws and regulations regarding emissions standards and were environmentally friendly, when in fact those cars were misrepresented to the Class Members as to their emissions standards and were particularly damaging to the environment. Class Members, as a result of VW's and Porsche's misrepresentations and fraudulent conduct, paid a high premium for those cars which was unjustified and fraudulent and made and continue to make monthly loan or lease payments based on a fraudulently calculated value.

## II.     NATURE OF THE ACTION

1.     This action is not about corporate negligence. It is about the premeditated, intentional and carefully devised scheme of an international automaker, aided and abetted by its financial arm Porsche Financial and its supplier, Bosch, designed to deceive United States regulators and well-intentioned Class Members in order to garner a greater share of the United States market for environmentally friendly vehicles and reap greater profits.

2.     As detailed in the Notice of Violation (the "NOV") issued on November 2, 2015 by the United States Environmental Protection Agency ("EPA"), Porsche, equipped and sold certain diesel light duty vehicles equipped with a 3.0 liter engine, including the 2015 Porsche

1766.0003.3.2

Cayenne Diesel with sophisticated software which detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  At all other times, when the vehicle is running the emissions controls are electronically suppressed. This results in cars that meet emissions standards in the laboratory, but during normal operations emit nitrogen oxides ("NOx") at up to 40 times the standard allowed under United States laws and regulations.  The software produced by Bosch and used by Porsche is the so-called "defeat device" as defined by the Clean Air Act.

3.      The Clean Air Act contains strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards in place to mitigate air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of the emissions control system during normal operating conditions cannot be certified.  By manufacturing, marketing, selling, financing the purchase of, and leasing cars with defeat devices that allowed for higher levels of emissions that were mandated by the EPA, Porsche, VW and Bosch violated the Clean Air Act, conspired to defraud and defrauded their customers and engaged in unfair competition and deceptive sales practices under state and federal law.

4.      According to the EPA's NOV, Porsche installed its defeat devices in at least the 2015 Porsche Cayenne (the "Cayenne" or the "Defeat Device Vehicles"). Discovery may reveal that additional Porsche vehicles models and model years are included in the Defeat Device Vehicles.

5.      Porsche has charged a substantial premium for the Cayenne, ironically marketed as "clean diesel." That premium ranges from roughly $4,000.00 over the gasoline counterparts.

4

For example, for the 2015 Porsche Cayenne, the base model has a starting MSRP of $58,300.00. The base Cayenne clean diesel, however, has a starting MSRP of $62,300.00, a price premium of $4,000.00.

6. Even f Porsche is able eventually to make the Defeat Device Vehicles compliant, Class Members will nonetheless suffer actual harm and actual damages because their vehicles will no longer perform as they did when purchased and advertised. This will necessarily result in a diminution in value of the Defeat Device Vehicles and will cause Class Members to pay more for fuel. The diminution in value of the Defeat Device Vehicles causes Class Members to further suffer actual harm and actual damages because they purchase their Defeat Device Vehicles for an inflated price and/ or the financed or leased their Defeat Device Vehicles with Porsche Financial based on an inflated purchase price at the time of purchase or lease which, in turn, resulted in higher down payments, monthly payments of principal and interest or lease payments, and as to lessees of Defeat Device Vehicles, inflated residual values of such vehicles.

7. Porsche purposefully, intentionally and with fraudulent intent misrepresented to Plaintiff and Class Members and warranted to Plaintiff and Class Members the following: (1) the Defeat Device Vehicles complied with the laws of the United States and the rules and regulations of the EPA when in fact, those Defeat Device Vehicles were manufactured to purposefully evade federal and state laws; (2) the Defeat Device Vehicles were "clean diesel" vehicles that "were cleaner than conventional diesels, emitting as much as 95% fewer soot emissions than previous diesel engines as well as a reduction in oxides of nitrogen and sulfur[…] and saved money because they were fuel efficient, when in fact those Clean Diesel engines emitted up to 40 times the allowed level of pollutants, including NOx; and (3) the quality of the Defeat Device Vehicles as it relates to emissions standards (the "Representations and Warranties").

5

8.      As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health." Yet that is exactly what Porsche did in its 2015 Cayenne.

9.      As a result of Porsche's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Defeat Device Vehicles emit up to 40 times the allowed emission levels, owners and/or lessees of the Defeat Device Vehicles have suffered losses in money and/or property and continue to do so. The acts and omissions committed by Volkswagen were enabled by the aid and assistance of Porsche Financial, which allowed Volkswagen to act as its agent to offer to lease or finance the Defeat Device Vehicles pursuant to contracts originated by Porsche so that Porsche Financial's rights would be subject to all claims and defenses which a purchaser on the contract could assert against Porsche, with liability up to the face amount of each contract.

10.     In addition, Porsche Financial participated in and/or aided and abetted the acts and omissions of VW, Porsche AG and Porsche North America by presenting to Plaintiff and Class Members retail installment contracts and/or consumer lease agreements that contained disclosures that were meaningless and illusory. Under the laws of the United States, that decision to profit from what Porsche Financial knew was Porsche's ongoing fraud makes Porsche Financial not only an aider and abettor of that crime but also a RICO co-conspirator with Porsche and Bosch that is jointly liable for treble the damages that Porsche's fraud has caused US consumers.

11.     Porsche's fraudulent scheme was also facilitated and aided and abetted by Bosch, which created the software program used in Porsche's defeat device. As early as 2007, Bosch

6

warned VW, Porsche's holding company, that installing and using the software in vehicles that were driven on the road would constitute a criminal offense because the software was designed solely for "internal testing purposed" and not for actual driving conditions. Despite that warning, Bosch proceeded to sell or license 11, 0000,000 of the component devices to VW between 2009 and 2015, and, then starting in 2012 sold the defeat devices to Porsche, knowing that VW and Porsche intended to use them in production vehicles. Instead of refusing to provide VW and Porsche with the defeat devices that Bosch knew would enable them to engage in criminal fraud, Bosch decided to profit from VW and Porsche's fraud by selling the defeat devices. Under the laws of the United States, that decision to profit from what Bosch knew was VW's and Porsche's ongoing fraud makes Bosch an aider and abettor of that crime and a RICO co-conspirator with Volkswagen, Porsche and Porsche Financial that is jointly liable for treble the damages that VW's and Porsche's fraud has caused US consumers.

12.     As a result of VW's and Porsche's unfair, deceptive and/or fraudulent business practices the Bosch, Porsche Financial and Porsche RICO conspiracy, and Porsche's breach of its Representations and Warranties, including but not limited to, its failure to disclose that, under normal operating conditions, the Defeat Device Vehicles emit up to 40 times the allowed levels of pollution, Plaintiff and Class Members have suffered losses in money and/or property.

13.     Had Plaintiff and Class Members known of the "defeat device" at the time they purchased or leased their Defeat Device Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Porsche recalls the Defeat Device Vehicles and degrades the clean diesel engine performance in order to make the Defeat Device Vehicles compliant with EPA standards, Plaintiff and  Class Members will be required to spend additional sums on fuel and will not

7

obtain the performance characteristics or environmental cleanliness of their vehicles when purchased. In addition, the Defeat Device Vehicles will be worth less in the marketplace because of their decrease in performance, efficiency and environmental friendliness. However, Plaintiff and Class Members will still be required to make loan or lease payments based on the inflated purchase or lease price of the Defeat Device Vehicles.

14.     The cooperation and financial support and funding by Porsche Financial  of the unfair and deceptive and unconscionable and fraudulent sales and lease activity by Porsche was agreed to by Porsche Financial and was a necessary part of the scheme of VW and Porsche. The obligation of Plaintiff and Class Members to pay Porsche Financial under the credit/lease agreements between them was and is subject to all claims and defenses which Plaintiff and Class Members have and had against VW and Porsche AG, Porsche North America and Porsche Financial cannot be a holder in due course of any instrument signed by Plaintiff and Class Members.

15.     Plaintiff brings this action individually and on behalf of all current owners of one or more Defeat Device Vehicles, who purchased, a Defeat Device Vehicle or who entered into a retail installment contract or a consumer lease agreement, within the United States, for such Defeat Device Vehicle with Porsche Financial. Plaintiff seeks damages, injunctive relief, and equitable relief for the conduct of VW, Porsche, Porsche Financial and Bosch related to the "defeat device," as alleged in this Complaint.

### III.     JURISDICTION

16.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000.00, exclusive of costs and interest; and minimal diversity exists.

1766.0003.3.2

This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**IV.**   **VENUE**

17.      Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff purchased his Defeat Device Vehicle in this District.  Moreover, Porsche North America and/or Porsche Financial have marketed, advertized, sold and leased the Defeat Device Vehicles within this District.

**V.**   **PARTIES**

**A.**   **Plaintiff**

18.      Plaintiff Ross Vigran is an individual residing in Cincinnati, Ohio 45242.

19.      In July 2015, Plaintiff visited Porsche of the Village, an authorized Porsche dealer located at 4113 Plainville Road, Cincinnati, Ohio, 45227. He and negotiated the lease of a new 2015 Porsche Cayenne Diesel from that dealer for the price of $66,700.00 and additional items for total price to $72,744.09and traded in his existing car. A copy of the Motor Vehicle Lease Agreement (the "Lease Agreement") is attached hereto as <u>Exhibit 1.</u>

20.      Plaintiff leased the Cayenne Diesel because he believed that Porsche's Representations and Warranties were true and had he known they were false, he would not have purchased.

21.      Plaintiff still leases his Defeat Device Vehicle. At the time of lease, it had an advertised fuel efficiency of 20 miles per gallon in the city and up to 29 miles per gallon on the highway. Unknown to Plaintiff, at the time he leased his vehicle, it was equipped with an emissions control "defeat device" which caused this vehicle to get an undue EPA certification

9

and pass emissions tests, but at all other times emitted up to 40 times the allowed level of pollutants, including NOx. The use of the "defeat device" by Porsche has caused Plaintiff out-of-pocket loss, future attempted repairs and diminished the value of his vehicle. Porsche knew about and purposefully used the "defeat device," but did not disclose the "defeat device" and its effects to Plaintiff, so Plaintiff leased his Defeat Device Vehicle on the reasonable, but mistaken belief, that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life and the value associated with such characteristics.

22.     Plaintiff selected and ultimately leased his vehicle through Porsche Financial's financial incentives and relying on Porsche's Representations and Warranties and reputation. Had Porsche disclosed that its Representations and Warranties were untrue including that the vehicle did not meet federal and state emissions standards and that the clean diesel in his vehicle actually emitted up to 40 times the permitted levels of pollutants, including NOx, he would not have leased his vehicle with the Clean Diesel engine.

23.     Plaintiff leased his Defeat Device Vehicle at the dealership through Porsche Financial and agreed to the lease terms for his Defeat Device Vehicle Porsche Financials financial incentives and Porsche's intentionally fraudulent Representations and Warranties.

24.     Plaintiff has suffered an ascertainable loss as a result of Porsche's omissions and/or misrepresentations associated with the clean diesel engine system, including but not limited to, out-of-pocket loss and future attempted repairs, future additional fuel costs, and diminished value of their vehicle.

25.     Plaintiff also suffered an ascertainable loss as a result of Porsche's omissions and/or misrepresentations associated with the clean diesel engine system because he agreed to

lease his Defeat Device Vehicle based on untrue Representations and Warranties as represented, marketed and advertized to them by Porsche.

26. None of the Defendants nor their agents, dealers, or other representatives informed Plaintiff of the existence of the "defeat device" and/or defective design of the clean diesel engine prior to purchase and/or the additional pollutants being exhausted.

**B.** **Defendants**

27. Defendant Volkswagen AG is a foreign for-profit corporation. Its principal place of business is at Brieffach 11/1896, 38436 Wolfsburg, Germany. Volkswagen AG is one of the world's largest car manufacturers. It owns and controls the brand names Volkswagen, Porsche, Rolls-Royce, Bentley, Audi, Lamborghini, Skoda and Seat. Volkswagen AG designs, manufactures, tests, markets, distributes and sells the Defective Vehicles. Volkswagen AG delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and in the State of Ohio.

28. Defendant Porsche AG, is a foreign for-profit public corporation. Its principal place of business in Stuttgart, Germany. Porsche AG is a subsidiary of Volkswagen AG. Porsche AG designs, manufactures, tests, markets, distributes and sells the Defective Vehicles. Volkswagen AG delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and in the State of Ohio.

29. Defendant Porsche Cars North America is a domestic for profit corporation organized under the laws of the State of Delaware and is headquartered at One Porsche Drive, Atlanta, Georgia 30354. Porsche Cars North America is a wholly-owned subsidiary of Porsche AG. It also maintains a registered agent in the State of Ohio. Porsche Cars North America. Porsche Cars North American is the exclusive U.S. importer of Porsche cars, including the

Cayenne model. Porsche Cars North America delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Ohio.

30.     Defendant Porsche Financial Services, Inc.  a wholly owned subsidiary of Volkswagen AG, was founded in 1991. It is organized under the laws of the State of Delaware, with its principal place of business located at 4343 Commerce Court, Suite 300, Lisle 60532. It also maintains a registered agent in the State of Ohio. At all times relevant to this action, Porsche Financial engaged in the business of financing the sale and/or lease of motor vehicles to Porsche consumers for personal use, and is a holder of one or more sale or lease financing agreements from Plaintiff and Class Members. The acts and omissions committed by Porsche were enabled by the active participation, aid and assistance of Porsche Financial, who offered consumer lease agreements, retail installment contracts, and financed extended warranties through contracts originated by Porsche dealers as their agents, so that Porsche Financial's rights are subject to all claims and defenses which Plaintiff and Class Members could assert against Porsche, with liability up to the face amount of each contract.

31.     Defendant Robert Bosch GmbH is a German multinational engineering and electronics company headquartered in Gerlingen, near Stuttgard, Germany.

32.     Defendant Robert Bosch LLC is a domestic for-profit limited liability company organized under the laws of the State of Delaware. It is headquartered at 38000 Hills Tech Drive Farmington Hills, MI 48331. Robert Bosch LLC is a wholly-owned subsidiary of Bosch. It maintains a registered agent in the State of Ohio.

33.     At all times from at least January 1, 2012 through the present, Bosch supplied defeat devices to Porsche.

12

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

34.    Plaintiff and Class Members had no way of knowing about Porsche's and Bosch's deception with respect to its clean diesel engine system and "defeat device." It took federal EPA investigations to uncover Porsche's and Bosch's deception, which involved sophisticated software manipulation on Porsche's part and the use of special testing devised by the Board to uncover Porsche scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Porsche and Bosch were intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

35.    Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Porsche and Bosch were concealing the conduct complained of herein and misrepresenting its true position with respect to the emissions qualities of the Defeat Device Vehicles.

36.    Plaintiff and Class Members had no way to discover and did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Porsche and Bosch did not report information within their knowledge to federal and state authorities, Porsche's dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Porsche and Bosch had information in their possession about the existence of their sophisticated emissions scheme and that they opted to conceal that information, which was discovered by Plaintiff\ only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiff and Class Members have disclosed that Porsche, Bosch and Porsche Financing  valued profits over compliance with federal and state law and a healthy environment,

or the trust that Plaintiff and other Class Members had placed in their representations, or that, necessarily, Porsche, Porsche Financing and Bosch actively discouraged their personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of their vehicles, or of Porsche's emissions scheme.

37.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B.    Fraudulent Concealment Tolling**

38.    All applicable statutes of limitation have also been tolled by Porsche's, Porsche Financing's and Bosch's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

39.    Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Porsche falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted, and Porsche Financial participated in and assisted Porsche in its scheme by extending credit or offering consumers leases to purchasers or lessees of the Defeat Device Vehicles and Bosch participated in and assisted Porsche in its scheme by selling thousands of defeat devices to Porsche for use in on road vehicles sold to United States consumers not for a limited number of vehicles used for testing.

**C.    Estoppel**

40.    Porsche, VW and Porsche Financial were under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of emissions from

1766.0003.3.2

the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

41.     Porsche, VW and Porsche Financial and Bosch knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions of the vehicles at issue.

42.     Porsche, VW and Porsche Financial and Bosch also knew that a certain segment of the buying public specifically looked for "green vehicles."

43.     Porsche, VW and Porsche Financial and Bosch were also under a continuous duty to disclose to Plaintiff\ and Class Members that they had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that they systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

44.     Based on the foregoing, Porsche, VW and Porsche Financial, VW and Bosch are estopped from relying on any statutes of limitations in defense of this action.

## VII.    CLASS ALLEGATIONS

45.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes ("Classes"):

**The Nationwide Class:**

All persons who are current owners and/or lessees of one or more Defeat Device Vehicles and/or all persons who entered into a retail installment contract or a consumer lease agreement, within the United States, for a Defeat Device Vehicle with Porsche Financial.  Defeat Device Vehicles include, the 2015 Porsche Cayenne Diesel.

**The Ohio Subclass**

15

All persons who are current owners and/or lessees of one or more Defeat Device Vehicles and/or all persons who entered into a retail installment contract or a consumer lease agreement, within the State of Ohio, for such Defeat Device Vehicle with Porsche Financial Defeat Device Vehicles include, the 2015 Porsche Cayenne Diesel.

46. Excluded from the Classes are individuals who have personal injury claims resulting from the "defeat device" in the clean diesel system. Also excluded from the Classes are employees of Volkswagen AG, Porsche AG, Porsche Cars North America, Porsche Financial Robert Bosch GmbH, and Robert Bosch LLC and their subsidiaries and affiliates; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserve the right to revise the Classes definitions based upon information learned through discovery.

47. Certification of Plaintiff' claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

48. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

49. Numerosity. Federal Rule of Civil Procedure 23(a)(1): The Class Members are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are not less than thousands of Class Members, the precise number of Class Members in the Classes is unknown to Plaintiff, but may be ascertained from Porsche's and Porsche Financial's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

1766.0003.3.2

50.     <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a)      Whether Defendants engaged in the conduct alleged herein;

b)      Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Defeat Device Vehicles into the stream of commerce in the United States;

c)      Whether the clean diesel engine system in the Defeat Device Vehicles contains a defect in that it does not comply with US EPA requirements;

d)      Whether the clean diesel engine systems in Defeat Device Vehicles can be made to comply with EPA standards without substantially degrading the performance, efficiency and/or value of the Defeat Device Vehicles;

e)      Whether WV, Porsche and/or Porsche Financial knew about the "defeat device" and, if so, how long Volkswagen has known;

f)      Whether Bosch procured the defeat devices to VW and/or Porsche with the knowledge that they would use them in its production vehicles;

g)      Whether Bosch knew that using the defeat device in production vehicles constituted criminal activity;

h)      Whether VW and/or Porsche designed, manufactured, marketed, and distributed Defeat Device Vehicles with a "defeat device;"

i)      Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

17

j)      Whether Plaintiff and the other Class Members overpaid for their Defeat Device Vehicles;

k)      Whether Porsche and Porsche Financial acted in concert to defraud Plaintiff and Class Members as to the true characteristics and the true value of the Defeat Device Vehicles;

l)      Whether Porsche Financial acted in concert and aided and abetted WV and/or Porsche's fraud;

m)      Whether Bosch acted in concert and aided and abetted VW and/or Porsche's fraud;

n)      Whether Plaintiff and other Class Members have been induced into entering purchasing and/or financing or leasing their Defeat Device Vehicles based on Defendants' false and misleading Representations and Warranties as to the true characteristics and value of the Defeat Device Vehicles;

o)      Whether Plaintiff and Class Members have been induced into entering into financing or leasing their Defeat Device Vehicles and/or their Extended Warranties based on Defendants' false and misleading disclosures in their retail installment contracts or consumer lease agreements;

p)      Whether Defendants' disclosures in the retail installment contracts or consumer lease agreements complied with applicable laws and regulations;

q)      Whether Defendants' conduct violates RICO, consumer protection statutes, warranty laws, TILA and other laws asserted herein;

r)      Whether Plaintiff and the other Class Members are entitled to equitable relief, including, but not limited to, restitution, rescission or injunctive relief; and

1766.0003.3.2

s)    Whether Plaintiff and the other Class Members are entitled to damages, including treble damages, and other monetary relief and, if so, in what amount.

51.    Typicality. Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the claims of the other Class Members because, among other things, all Class Members were comparably injured through Defendants' wrongful conduct as described above.

52.    Adequacy. Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate representative for the Classes because his interests do not conflict with the interests of the other Class Members he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

53.    Declaratory and Injunctive Relief. Federal Rule of Civil Procedure 23(b)(2): Defendants, and each of them, have acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

54.    Superiority. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Members of the proposed Classes to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and

19

expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## A.  CLAIMS BROUGHT ON BEHALF OF THE CLASSES

### COUNT I

### FRAUD BY CONCEALMENT

55.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

56.     This claim is brought on behalf of the proposed Classes.

57.     Porsche, VW and Porsche Financial intentionally concealed and suppressed material facts concerning the quality of the Defeat Device Vehicles. As alleged in this Complaint, notwithstanding references as "clean diesel," or to their engines as "clean diesel" " engines, Porsche  and VW engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal their vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Porsche and VW intended: vehicles passed emissions certifications by way of deliberately induced false readings.

58.     Porsche and VW intentionally concealed facts that caused their Representations and Warranties as to the Defeat Device Vehicles to be false.

59.     Plaintiff and Class Members reasonably relied upon Porsche's and VW's intentionally false Representations and Warranties. They had no way of knowing that Porsche's and VW's Representations and Warranties were false and gravely misleading. As alleged herein,

Porsche and VW employed extremely sophisticated methods of deception. Plaintiff, and Class Members did not, and could not, unravel Porsche's and VW's deception on their own.

60.    Porsche and VW intentionally concealed and suppressed material facts concerning their compliance with federal and state clean air law and emissions regulations that are meant to protect the public and consumers.

61.    Porsche and VW also took steps to ensure that their employees did not reveal the details of their scheme to regulators or consumers, including Plaintiff and Class Members. Porsche and VW did so in order to boost the reputations of their vehicles and to falsely assure purchasers and lessees of their vehicles, including certified previously-owned vehicles, that Porsche and VW are a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that their vehicles likewise comply with applicable law and regulations. Porsche's and VW's false Representations and Warranties were material to consumers, both because they concerned the quality of the affected vehicles, and also because the Representations and Warranties played a significant role in the value of the vehicles. As Porsche and VW knew, their customers, including Plaintiff, and Class Members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars and they paid accordingly.

62.    Porsche and VW had a duty to disclose the emissions scheme they engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Porsche and VW, because Porsche and VW had exclusive knowledge as to implementation and maintenance of their scheme, and because Porsche and VW knew the facts were not known to or reasonably discoverable by Plaintiff and Class Members. Porsche and VW also had a duty to disclose because they made general affirmative representations about

21

the qualities of their vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, their actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and their actual practices with respect to the vehicles at issue. Porsche and VW represented to Plaintiff and Class Members that they were purchasing or leasing clean diesel vehicles, and certification testing appeared to confirm this - except that, secretly, Porsche and VW had subverted the testing process thoroughly.

63. Porsche, VW and Porsche Financial actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect their profits and to avoid the perception that their vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Porsche, VW and Porsche Financial money, and they did so at the expense of Plaintiff and Class Members.

64. On information and belief, Porsche and VW have still not made full and adequate disclosures, and continue to defraud Plaintiff and Class Members by concealing material information regarding the emissions qualities of their referenced vehicles and its emissions scheme.

65. Plaintiff and Class Members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased purportedly "clean" diesel cars manufactured by Porsche and/or would not have continued to drive their heavily-

1766.0003.3.2

polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.

66.     Because of the concealment and/or suppression of the facts, Plaintiff and Class Members have sustained damage because they own vehicles that are diminished in value, as a result of Porsche's and VW's concealment of the true quality and quantity of those vehicles' emissions and Porsche's and VW's failure to timely disclose the actual emissions qualities and quantities of thousands of vehicles and the serious issues engendered by Porsche's and VW's corporate policies.

67.     The value of vehicles owned by Plaintiff and Class Members has diminished as a result of Porsche's and VW's fraudulent concealment of its emissions scheme, which has greatly tarnished the Porsche name attached to the vehicles and made any reasonable consumer reluctant to purchase any of the Defeat Device Vehicles.

68.     Accordingly, Porsche, VW and Porsche Financial are liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

69.     Porsche's VW's and Porsche Financial's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and Class Members, and the representations that Porsche, VW and Porsche Finanical made to them, in order to enrich Porsche, VW  and Porsche Financial. Therefore, Plaintiff and Class Members are entitled to punitive damages, attorneys' fees and costs.

## COUNT II

## CONSPIRACY TO COMMIT FRAUD (AS TO BOSCH)

70.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

71.     This claim is brought on behalf of the proposed Classes.

23

72.     Bosch conspired with Porsche and VW to deceive and defraud Plaintiff and Class Members.

73.     As early as 2007, Bosch knew that VW intended to engage in an illegal scheme to evade federal and state emissions standards and defraud Plaintiff and Class Members. In response, Bosch conspired with Porsche and VW to design, program, and manufacture the defeat device, the crucial and indispensable part of technology that Porsche and VW used to deceive the EPA and state regulators.

74.     Knowing that VW and later Porsche were acting illegally, Bosch agreed to conceal the fact that, like VW, Porsche intended to incorporate Bosch's defeat device into its vehicles and agreed to supply Porsche with the defeat devices used in all of the Defeat Device Vehicles. On information and belief, Bosch continued to work closely with Porsche and VW, and, upon information and belief, and in addition to the 11 million defeat devices it sold to VW, it sold thousands more defeat devices to Porsche knowing that those were vehicles being sold to the general public not vehicles used by Porsche for testing purposes.

75.     As set forth above, Porsche and VW systematically and repeatedly misrepresented, concealed and suppressed material facts concerning the quality and performance of the Defeat Device Vehicles in order to induce Plaintiff and Class Members to purchase or lease the Defeat Device Vehicles, claiming that (a) the Defeat Device Vehicles complied with the laws of the United States and the rules and regulations of the EPA when in fact, those Defeat Device Vehicles were manufactured to purposefully evade federal and state laws; (2) the Defeat Device Vehicles were "clean diesel" vehicles that "were cleaner than conventional diesels, emitting as much as 95% fewer soot emissions than previous diesel engines as well as a reduction in oxides of nitrogen and sulfur[…] and saved money because they were fuel efficient,

when in fact those Clean Diesel engines emitted up to 40 times the allowed level of pollutants, including NOx; and (3) the quality of the Defeat Device Vehicles as it relates to emissions standards.

76.    Bosch joined and facilitated VW's and Porsche's fraudulent scheme by supplying the critical component Porsche needed in order to deceive regulators into allowing the Defeat Device Vehicles to be sold in the United States. Bosch also facilitated VW's and Porsche's fraudulent scheme by concealing the existence of the defeat device which Bosch knew was being used for on the road vehicles sold to the general public (not test vehicles) even though it was fully aware that VW and Porsche intended to and did use the defeat device to deceive regulators, break the law and defraud customers.

77.    If Bosch had  not conspired with Porsche and VW by concealing Porsche's fraudulent scheme and providing the critical technology, VW's and Porsche's heavily polluting diesel vehicles would not have been legally sold in the United States and Plaintiff and Class Members would not have purchased them. As a direct and proximate result of Bosch's conduct, Plaintiff and Class Members have been damaged in that they purchased or leased a vehicle that was illegal to sell in the first instance, and, even if lawfully sold, was less valuable than what they paid because the Defeat Device Vehicles do not comply with applicable environmental regulations, and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

78.    Accordingly, Bosch is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

79.    Bosch's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and Class Members.

1766.0003.3.2

Therefore, Plaintiff and Class Members are entitled to punitive damages, attorneys' fees and costs.

## COUNT III

### AIDING AND ABETTING FRAUD (AS TO PORSCHE FINANCIAL)

80.     Plaintiff realleges and incorporates all other paragraphs of this Complaint as if fully rewritten herein.

81.     Plaintiff brings this Count on behalf of himself and the proposed Classes.

82.     Porsche Financial, as an entity wholly owned and controlled by VW, the parent company of Porsche AG, which in turn is the parent company of Porsche North America, is closely related to Porsche North America.

83.     As such, it knew or should have known of the premeditated, intentional and carefully devised scheme of VW and Porsche to defraud consumers by marketing and offering for sale or lease and putting into the stream of commerce the Defeat Device Vehicles and  that that scheme resulted in violations of the federal and states laws.

84.     By financing the purchase or lease of the Defeat Device Vehicles, Porsche Financial provided substantial assistance to VW and Porsche in perpetrating its fraudulent scheme. In fact, Porsche Financial is an integral and critical part of and enabled VW and Porsche scheme as the financing or leasing of any Defeat Device Vehicle through Porsche Financial contributes to the gain of all Defendants and increase their profits.

85.     As a result of Porsche Financial' s intentional aiding and abetting the fraudulent conduct of VW and Porsche, Plaintiff and Class Members were injured because they purchased, financed and/or leased the Defeat Device Vehicles.

86.     As a direct and proximate result of Porsche Financial 's intentional aiding and abetting, Plaintiff and Class Members have been damaged in an amount to be proven at trial,

1766.0003.3.2

which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, punitive damages, attorneys fees and costs, and other damages allowed by law.

## COUNT IV

## AIDING AND ABETTING FRAUD (AS TO BOSCH)

87. Plaintiff realleges and incorporates all other paragraphs of this Complaint as if fully rewritten herein.

88. Plaintiff brings this Count on behalf of himself and the proposed Classes.

89. Bosch designed and supplied the defeat device to VW and Porsche that Porsche incorporated in thousands of Porsche Defeat Device Vehicles. As early as 2007, Bosch warned VW, Porsche's parent company, that installing and using the software in vehicles that were driven on the road would constitute a criminal offense because the software was designed solely for "internal testing purposed" and not for actual driving conditions.

90. When it sold the defeat device to Porsche, Bosch knew that Porsche intended to use the defeat device in the Defeat Device Vehicles because it sold thousands of defeat devices to Volkswagen for on the road vehicles sold to the public (not for a few test vehicles) in order to evade federal and state emission standards and defraud Plaintiff and Class Members.

91. By selling the defeat device to Porsche with the knowledge that it would be use to defraud United States regulators and consumers, Bosch provided substantial assistance to VW and Porsche in perpetrating their fraudulent scheme. In fact, Bosch is an integral and critical part of and enabled VW's and Porsche's scheme as without Bosch agreeing to conceal the fact that like VW, Porsche intended to incorporate the defeat device into the Defeat Device Vehicles and

27

agreeing to supply the defeat devices used in all Defeat Device Vehicles, Bosch contributed to the financial gain of all Defendants and the increase of all of the Defendants' profits.

92.     As a result of Bosch's intentional aiding and abetting the fraudulent conduct of VW, Porsche and Porsche Financial, Plaintiff and Class Members were injured because they purchased, financed and/or leased the Defeat Device Vehicles.

93.     As a direct and proximate result of Bosch's intentional aiding and abetting, Plaintiff and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, punitive damages, attorneys fees and costs, and other damages allowed by law.

## COUNT V

## BREACH OF THE MAGNUSON -MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *ET SEQ.*

94.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

95.     This claim is brought on behalf of the proposed Classes.

96.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301, *et seq.* by virtue of 23 U.S.C. § 1332 (a)-(d).

97.     The Defeat Device Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

98.     Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled, under applicable law, to enforce against the warrantor the obligations of its express and implied warranties.

1766.0003.3.2

99.     Porsche is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

100.     Section 2310(d)(1) of the Magnuson-Moss Warranty Act provides a claim for relief for any consumer who is damaged by the failure of a warrantor to comply with an expressed or implied warranty.

101.     Porsche provided Plaintiff and Class Members with express and implied warranties of merchantability in connection with the purchase or lease of the Defeat Device Vehicles that are warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 (7).  In particular, Porsche warranted that the Defeat Device Vehicles were eco-friendly and fit for their ordinary purpose as passenger motor vehicles, would pass without objection in the trade as designed, manufactured and marketed and were adequately contained, packaged and labeled, and that the Defeat Device Vehicles complied with Porsche's express Representations and Warranties which they did not.

102.     Porsche breached these warranties, as described in more detail above, and is therefore liable to Plaintiff and Class Members pursuant to 15 U.S.C. § 2301(d)(1). Without limitation, the Defeat Device Vehicles share common defects in that they are equipped with the defeat devices that cause the Defeat Device Vehicles to be defective. 92.   In   its   capacity   as warrantor, Porsche had knowledge of the inherent defects in the Defeat Device Vehicles. Therefore, any efforts to limit the implied warranties in a manner that would exclude coverage of the Defeat Device Vehicles is unconscionable, and any such efforts to disclaim, or otherwise limit, liability for the Defeat Device Vehicles is null and void.

103.     The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Porsche and Plaintiff and Class Members, as, at the time of

purchase, Plaintiff and Class Members had no option for purchasing warranty coverage other than directly from Porsche.

104. The limitations on the warranties are substantively unconscionable. Porsche knew that the Defeat Device Vehicles were defective. Porsche failed to disclose these defects to Plaintiff and Class Members. Thus, Porsche's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

105. Plaintiff and Class Members have had sufficient direct dealings with Porsche or its agents (dealerships) to establish privity of contract. Nonetheless, privity is not required here because Plaintiff and Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Defeat Device Vehicles and have no rights under the warranty agreements provided with the Defeat Device Vehicles; the warranty agreements were designed for and intended to benefit consumers.

106. Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Porsche notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

107. Furthermore, affording Porsche an opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defeat Device Vehicle, Porsche knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Defeat Device Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be

30

inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Porsche a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

108.    Plaintiff and Class Members would suffer economic hardship if they returned their Defeat Device Vehicles but did not receive the return of all payments made by them. Because Porsche has no available cure, Plaintiff and Class Members have not re-accepted their Defeat Device Vehicles by retaining them.

109.    Pursuant to 15 U.S.C. § 2310(d)(3), the amount in controversy of Plaintiff's and each Member of the Classes' individual claim exceeds the sum of $25. The total amount in controversy in this Class action exceeds the sum of $50,000.00 exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. The size of each plaintiff class or subclass far exceeds 100 members, but the precise number of class members is entirely within Porsche's and Porsche Financial's knowledge and control. Plaintiff, individually, and on behalf of the other Class Members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and Class Members in connection with the commencement and prosecution of this action.

110.    Further, Plaintiff and Class Members are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Based on Porsche's continuing failures to fix the known defects, Plaintiff seeks a declaration that Porsche has not adequately implemented its recall commitments and requirements and general commitments to fix its failed processes, and injunctive relief in the

31

form of judicial supervision over the recall process is warranted. Plaintiff also seeks the establishment of a Porsche -funded program for Plaintiff and Class Members to recover out-of-pocket costs incurred.

111.    Plaintiff also requests, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs he have incurred in attempting to rectify the defects. Such expenses and losses will continue as Plaintiff and Class Members must take time off from work, pay for rental cars or other transportation arrangements, and expenses involved in going through the recall process.

## COUNT VI

## BREACH OF CONTRACT

112.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

113.    Plaintiff brings this Count on behalf of himself individually and on behalf of Class Members.

114.    Porsche's misrepresentations and omissions alleged herein, including Porsche's false Representations and Warranties and its failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and Class Members to make their purchases or leases of their Defeat Device Vehicles. Absent those misrepresentations and omissions, Plaintiff and Class Members would not have purchased or leased these Defeat Device Vehicles, would not have purchased or leased these Defeat Device Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the clean diesel engine system and the "defeat device." Accordingly, Plaintiff and Class Members overpaid for their Defeat Device Vehicles and did not receive the benefit of their bargain.

1766.0003.3.2

115.     Each and every purchase agreement or lease agreement for a Defeat Device Vehicle constitutes a contract between Defendants and the purchaser or lessee. Porsche breached these contracts by selling or leasing defective Defeat Device Vehicles and by misrepresenting the Defeat Device Vehicles in its Representations and Warranties included with such contracts or failing to disclose the existence of the "defeat device" and/or defective design.

116.     As a direct and proximate result of Porsche's breach of contract, Plaintiff and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, punitive damages, attorneys fees and costs, and other damages allowed by law.

## COUNT VII

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), AGAINST THE DEFENDANTS  18 U.S.C. § 1962(C)

117.     Plaintiff realleges and incorporates by reference each allegation contained above as if fully set forth herein.

118.     Plaintiff brings this Count on behalf of himself individually and on behalf of Class Members.

119.     The Defendants are all "persons" under 18 U.S.C. § 1961(3).

120.     The Defendants violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the Porsche RICO Enterprise through a pattern of racketeering activity. In particular, Porsche North America formed a RICO enterprise with VW, Porsche AG, Porsche Financial and Bosch.  Porsche formed the enterprise in order to increase sales and leases of Porsche's heavily – polluting diesel vehicles with the knowledge that these vehicles violated the strict EPA and state emission standards. VW assisted in the Porsche RICO enterprise by collaborating with, assisting with the design of or providing Porsche with the defeat devices.  Porsche Financial assisted in

33

the Porsche RICO Enterprise by financing or leasing, at times through special incentives, the Defeat Device Vehicles. Bosch, VW and Porsche collaborated on the design and installation of the defeat device that Porsche incorporated into the Defeat Device Vehicles to evade EPA emissions testing. Porsche then continued the RICO Enterprise forward through a pattern of false and fraudulent statements to regulators and customers. As described herein, these fraudulent actions injured Plaintiff and Class Members.

121. Plaintiff and Class Members are "person[s] injured in his or her business or property" by reason of the Defendants' violation of RICO within the meaning of 18 U.S.C. § 1964(c).

**(1)** **The Porsche RICO Enterprise**

122. The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the Porsche RICO Enterprise:

a) VW, Porsche AG. Porsche North America, and Porsche Financial, who designed, manufactured, and sold and financed or leased hundreds of thousands of Defective Vehicles knowing that the Defeat Devices Vehicles contained the illegal defeat devices, the scope and nature of which they concealed from and misrepresented to the public and regulators for more than a decade and still refuse to entirely acknowledge.

b) Robert Bosch GmbH and Robert Bosch LLC , who collaborated with the other Porsche RICO Enterprise members to design the illegal defeat devices and supplied the defeat devices to the RICO Enterprise, with full knowledge that they were being used for on the road vehicles sold to the general public (not test vehicles) to deceive regulators and defraud Plaintiff and Class Members.

34

c)      The Defendants' Officers, Executives, and Engineers, who have collaborated and colluded with each other and with other associates-in-fact in the Porsche RICO Enterprise to deceive Plaintiff and Class Members into purchasing, financing or leasing defective vehicles, and actively concealing the illegal defeat devices from Plaintiff and Class Members.

d)      Dealerships that sell vehicles manufactured by Porsche which sold or leased the Defective Vehicles containing illegal defeat devices to Plaintiff and Class Members.

123.    The Porsche RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose. The Porsche RICO Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

124.    While the Defendants participated in the conduct of the Porsche RICO Enterprise, they had an existence separate and distinct from the Porsche RICO Enterprise. Further, the Porsche RICO Enterprise was separate and distinct from the pattern of racketeering in which the Defendants have engaged.

125.    At all relevant times, the Defendants operated, controlled or managed the Porsche RICO Enterprise, through a variety of actions. The Defendants' participation in the Porsche RICO Enterprise was necessary for the successful operation of their scheme to defraud because Bosch collaborated with VW, Porsche AG, and Porsche North America to design the illegal defeat devices Bosh knew were to be placed in the Defeat Device Vehicles which were sold to

the general public and not used for test purposes and Porsche AG, Porsche North America and Porsche Financial manufactured, sold and/or financed or leased the Defeat Device Vehicles, concealed the nature and scope of the defeat devices, and profited from such concealment.

126. The members of the Porsche RICO Enterprise all served a common purpose: to sell or lease as many vehicles containing such defeat devices, as possible, and thereby maximize the revenue and profitability of the Porsche RICO Enterprise's members. The members of the Porsche RICO Enterprise shared the bounty generated by the enterprise, i.e., by sharing the benefit derived from increased sales revenue generated by the scheme to defraud. Each member of the Porsche RICO Enterprise benefited from the common purpose: Porsche and Porsche Financial sold, leased and financed at an inflated price more Defeat Device Vehicles than they would have otherwise had the scope and nature of the defeat devices not been concealed; Bosch designed and sold to Porsche the defeat devices used for on the road vehicles sold to the general public (not test vehicles) knowing that they were being used to deceive regulators and Class Members and the dealerships sold and serviced more Defeat Device Vehicles, and sold or leased those vehicles at a much higher price, as a result of the concealment of the scope and nature of the defeat devices from Plaintiff and Class Members; and VW as the holding company derived profits derived from its subsidiaries in Germany and in the United States. All this was the result of the collaborative effort among VW, Porsche AG, Porsche North America, Porsche Financial and Bosch.

127. VW and its subsidiaries sold many diesel vehicles in Europe, but only a small number in the United States. In the mid-2000's, VW set out to change that.

128. However, it realized that the diesel vehicles it intended to sell in the United States emitted too much pollution to meet EPA emissions standards.

1766.0003.3.2

129. The conventional solution to diesel emissions is the BlueTec system, developed and used by Mercedes, which mixes a chemical known as urea with a vehicle's emissions to neutralize the nitrogen oxide.[1] The system is effective, but costly, and requires drivers to periodically refill the tank of urea. In 2007, VW abandoned the BlueTec system as it was seen as too costly and cumbersome for the United States market. VW, Porsche's parent company, has admitted on September 22, 2015, that it has used defeat devices in approximately 11 million of its own vehicles sold worldwide.[2]

130. Rather than sacrifice power or fuel-efficiency to meet emissions standards or rely on the costly BlueTec system, Porsche, spurred by the success of VW models equipped with defeat devices in the United States, worked with WV and Bosch and formed the RICO Enterprise with Bosch in order to evade emissions regulations altogether. Bosch designed the defeat device that, as described above, turns on a vehicle's full emissions control system only when it senses the vehicle is undergoing emissions testing. Bosch has known since at least 2007 that VW, Porsche's parent company, intended to use, and did use, the defeat device for on the road vehicles sold to the general public (not test vehicles) to mislead regulators and the public. Bosch supplied and continued to supply defeat devices and emissions control systems to Porsche for use in all of the Defeat Device Vehicles.

131. Meanwhile, Porsche undertook an advertising campaign in which it represented to Plaintiff and Class Members that the Defeat Device Vehicles were "clean diesel" cars, and promised that the Defeat Device Vehicles would deliver extraordinarily low emissions, high performance, and high fuel efficiency. Porsche also undertook to mislead the

---

[1] Danny Hakim, Aaron M. Kessler, and Jack Ewing. *As Volkswagen Pushed to be No. 1, Ambitions Fueled a Scandal.* New York Times (Sept. 26, 2015), http://www.nytimes.com/2015/09/27/business/as-vw-pushed-to-be-no-1-ambitions-fueled-a-scandal.html.

[2] Charles Flemming, Volkswagen Emissions Scandal Expands to 11 Million Vehicles; L.A. Times, Sept. 22, 2015

1766.0003.3.2

EPA and state regulators by certifying that the Defeat DeviceVehicles performed to published specifications and that they did not contain defeat devices.

132. The Porsche RICO Enterprise was a collaborative effort that required its members to work together to accomplish their common end of increased sales of the Porsche Cayenne vehicles with Bosch supplied defeat devices in the United States. Without the collaboration in design, manufacturing, marketing, and sales, the Porsche RICO Enterprise's members would not have succeeded in selling so many of their heavily-polluting diesel vehicles in the United States.

133. At all relevant times, Porsche operated, controlled, and managed the Porsche RICO Enterprise. Porsche's participation in the RICO Enterprise was necessary for the successful operation of its scheme because the Porsche RICO Enterprise provided the means by which Porsche could design, manufacture, market, and sell the Defeat Device Vehicles with the concealed defeat devices.

134. At all relevant times, VW operated, controlled, and managed the Porsche RICO Enterprise. VW's participation in the RICO Enterprise was necessary for the successful operation of its scheme because the Porsche RICO Enterprise provided the means by which VW could design, manufacture, market, and sell the Defeat Device Vehicles with the concealed defeat devices.

135. At all relevant times, Bosch operated, controlled, and managed the Porsche RICO Enterprise. Bosch's participation in the RICO Enterprise was necessary for the successful operation of its scheme because Bosch provided the critical technology and expertise that the Porsche RICO Enterprise relied upon to carry out its aims.

136. At all relevant times, Porsche Financial operated, controlled, and managed the Porsche RICO Enterprise. Porsche Financial's participation in the Porsche RICO Enterprise was

necessary for the successful operation of its scheme because Porsche Financial provided the financing and special incentives to induce Class Members to purchase or lease the Defeat Device Vehicles that the Porsche RICO Enterprise relied upon to carry out its aims.

137. The Porsche RICO Enterprise was engaged in and its activities affected interstate and foreign commerce.

**(2)** **Pattern of Racketeering Activity**

138. The Defendants, and each of them conducted and participated in the conduct of the affairs of the Porsche RICO Enterprise through a pattern of racketeering activity, beginning no later than 2012 and continuing to this day, that consists of numerous and repeated violations of the federal mail and wire fraud statutes. These statutes prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

139. For the Defendants, and each of them, the purpose of the scheme to defraud was to conceal the scope and nature of the illegal defeat devices found in hundreds of thousands of Defeat Device Vehicles worldwide in order to sell, finance and/or lease more defeat devices, more vehicles, to sell them at a higher price or for a higher profit, and to avoid incurring the expenses associated with repairing the defects. By concealing the scope and nature of the illegal defeat devices in the Defeat Device Vehicles, the Defendants, and each of them, also maintained and boosted consumer confidence in the "clean diesel" campaign, and avoided remediation costs and negative publicity, all of which furthered the scheme to defraud and helped the Defendants sell more vehicles than they would otherwise have sold, and to sell them at a much higher price or for a higher profit.

1766.0003.3.2

140.     As detailed in the General Factual Allegations, the Defendants, and each of them, were well aware of the defeat devices, but intentionally subjected Plaintiff and Class Members to those defects in order to maximize their profits. Moreover, once the defect became known, the Defendants, and each of them, failed to adequately remedy the defect: pollution emissions were still too high.

141.     To further the scheme to defraud, the Defendants, and each of them, repeatedly misrepresented and concealed the nature and scope of the defeat devices defect. The Defendants, and each of them, passed off a substandard recall but failed to adequately remedy the nature of the defect.

142.     To further the scheme to defraud, the Defendants, and each of them, concealed the nature and scope of the defeat devices defect from federal regulators, enabling it to escape investigation and costs associated with recalls and corrective action.

143.     To further the scheme to defraud, Defendants would promote and tout the reliability, and quality of the vehicles while simultaneously concealing the nature and scope of the defeat devices defect.

144.     To further the scheme to defraud, Defendants would promote and tout the reliability and quality of the vehicles while simultaneously concealing the nature and scope of the defeat devices defect.

145.     To further the scheme to defraud, the Defendants, and each of them, permitted or caused the dealerships to promote the reliability and quality of the purported eco-friendly nature of the Defeat Device Vehicles while simultaneously concealing the nature and scope of the defeat devices defect and Porsche's intentional false Representations and Warranties as to the Defeat Device Vehicles.

1766.0003.3.2

146. To further the scheme to defraud, Bosch during the period from 2007 to 2015 repeatedly used interstate mail and wire facilities to transmit correspondence with VW and Porsche regarding the design, programming, manufacture and implementation of the defeat device.

147. To further the scheme to defraud, Porsche Financial, repeatedly used interstate mail and wire facilities to promote financing or leasing options and/or incentives to Class Members and to submit and execute retail installment contracts and lease agreements that contained meaningless and illusory disclosures.

148. To carry out, or attempt to carry out the scheme to defraud, Defendants have conducted or participated in the conduct of the affairs of the Porsche RICO Enterprise through the following pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

a) The Defendants devised and furthered the scheme to defraud by use of the mail, telephone, and internet, and transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, writing(s) and/or signal(s), including the Porsche website, communications with the EPA and/or CARB statements to the press, and communications with other members of the Porsche RICO Enterprise, as well as advertisements and other communications to the Defendants' customers, including Plaintiff and Class Members. Given that each Defective Vehicle required a COC application, Defendants used the mail and wires 30 times, at minimum, to submit the fraudulent COC applications; and

b)    Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein.

149.    Defendants' pattern of racketeering activity in violation of the mail and wire fraud statutes included transmitting or causing to be transmitted, by means of mail and wire communication traveling in interstate or foreign commerce, between VW's, Porsche AG's, Porsche North America, Porsche Financial's and Bosch's offices in Germany, Virginia, Georgia, Michigan, Illinois or among the other 20-plus offices in the United States: communications concerning the illegal defeat devices; and submissions to the EPA regarding COC applications for each model and year of the Defeat Device Vehicles that failed to adequately disclose or address all auxiliary emission control devices that were installed in the Defeat Device Vehicles.

150.    The Defendants' conduct in furtherance of this scheme was intentional. Plaintiff and Class Members were directly harmed as a result of the Defendants' intentional conduct. Plaintiff, Class Members, and federal regulators, among others, relied on the Defendants' material misrepresentations and omissions.

151.    The Defendants engaged in a pattern of related and continuous predicate acts beginning at least in 2007. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiff and Class Members and obtaining significant monies and revenues from them while providing Defeat Device Vehicles worth significantly less than the purchase or lease price paid. The predicate acts also had the same or similar results, participants, victims, and methods of commission. The predicate acts were related and not isolated events.

152. The predicate acts all had the purpose of generating significant revenue and profits for the Defendants at the expense of Plaintiff and Class Members. The predicate acts were committed or caused to be committed by the Defendants through their participation in the Porsche RICO Enterprise and in furtherance of their fraudulent scheme, and were interrelated in that they involved obtaining Plaintiff's and Class Members' funds and avoiding the expenses associated with remediating the defect.

153. By reason of and as a result of the conduct of the Defendants, and in particular its pattern of racketeering activity, Plaintiff and Class Members have been injured in their business and/or property in multiple ways, including but not limited to:

      a)      purchasing, financing and/or leasing Defeat Device Vehicles that Plaintiff and Class Members would not otherwise have purchased, financed and/or leased;

      b)      overpaying for leased, financed and/or purchased Defeat Device Vehicles, in that Plaintiff and Class Members believed they were paying for "green" eco-friendly vehicles but obtaining vehicles that were neither "green" nor eco-friendly; and

      c)      purchasing Defeat Device Vehicles with diminished values for a premium, thus reducing their resale value; and

154. The Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiff and Class Members, and Plaintiff and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT VIII

## UNJUST ENRICHMENT
## (BROUGHT ON BEHALF OF THE CLASSES)

1766.0003.3.2

155. Plaintiff realleges and incorporates by reference each allegation contained above as if fully set forth herein.

156. Plaintiff brings this Count on behalf of himself individually and on behalf of Class Members.

157. As a result of Defendants' unlawful and deceptive actions described above and their intentional false Representations and Warranties as to the Defeat Device Vehicles. Defendants were enriched at the expense of Plaintiff and Class Members.

158. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiff and Class Members. Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and Class Members for the monies paid to Defendants for the Defeat Device Vehicles.

## COUNT IX

### VIOLATION OF THE TRUTH AND LENDING ACT, 15 U.S.C. § 1601 *ET SEQ.*, AND 12 C.F.R. §226.1 (REGULATION Z) (AGAINST VW AMERICA AND VW CREDIT)

159. Plaintiff realleges and incorporates by reference each allegation contained above as if fully set forth herein.

160. Plaintiff brings this Count on behalf of himself individually and on behalf of members of the Classes.

161. Defendants Porsche North America and/or Porsche Financial are "creditors" within the meaning of 15 U.S.C. § 1602(g).

162. Plaintiff and Class Members are "persons" within the meaning of 15 U.S.C. § 1602(e).

44

163.    In order to sell or lease to Plaintiff and Class Members the Defeat Device Vehicles, Defendants Porsche North America and/or Porsche Financial extended credit to Plaintiff and Class Members under consumer credit transactions or consumer leases, and Plaintiff and Class Members became obligated to Defendants Porsche North America and/or Porsche Financial pursuant to retail installment contracts or consumer lease agreements.

164.    Plaintiff's and Class Members' retail installment contracts and consumer lease agreements were consummated at the time Plaintiff and Class Members signed said documents presented to them by Porsche North America and/or Porsche Financial and the Defeat Device Vehicles were delivered to them.

165.    Defendants Porsche North America and/or Porsche Financial, as creditors, had a duty to make certain financial disclosures as provided by 15 U.S.C. § 1601 *et seq.*

166.    Defendants Porsche North America and/or Porsche Financial intentionally failed to comply with the  requirements of the Truth in Lending Act, ("TILA") 15 U.S.C. § 1601, *et seq.* and Regulation Z,  12 C.F.R. §226.17 & 18, by providing Plaintiff and Class Members with retail installment contracts or consumer lease agreements containing financial disclosures that were meaningless and illusory because they were based on Defendants' pattern of intentional, knowing and fraudulent concealment of the true characteristics of the Defeat Device Vehicles, and the real value of the Defeat Device Vehicles was less than sale or lease value represented by Porsche North America and/or Porsche Financial and their intentional breach of the Representations and Warranties as to the Defeat Device Vehicles.

167.    Plaintiff and Class Members relied on the disclosures VW Porsche North America and/or Porsche Financial made in the retail installment contracts and consumer lease agreements to execute said documents.

1766.0003.3.2

168.    Plaintiff and Class Members suffered damages as a result of Porsche North America's and/or Porsche Financial's meaningless and illusory disclosures because they purchased, financed or leased a vehicle, the value of which was inflated based on the fraudulent concealments of its true characteristics.  Had the disclosures on the retail installment contracts or lease agreements had been accurate, Plaintiff and Class Members would not have purchased or leased the Defeat Device Vehicles or would have purchased or leased them at a lower price.

169.    Defendants Porsche North America's and/or Porsche Financial's failure to provide the required disclosures provides Plaintiff and Class Members with the right to rescind the transaction, and Plaintiff, through this Complaint which is intended to be construed, for purposes of this claim, as a formal Notice of Rescission, hereby elect to rescind the transaction.

170.    As a direct and proximate result of Defendants Porsche North America's and/or Porsche Financial's violations, Plaintiff and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all statutory, compensatory damages, incidental and consequential damages, punitive damages, attorneys' fees and costs, and other damages allowed by law.

## COUNT X

### VIOLATION OF THE CONSUMER LEASING ACT, 15 U.S.C. § 1667 *ET SEQ.* AND 16 C.F.R. §433 *ET SEQ.*  (BROUGHT ON BEHALF OF THE CLASSES)

171.    Plaintiff realleges and incorporates by reference each allegation contained above as if fully set forth herein.

172.    Plaintiff brings this Count on behalf of himself individually and on behalf of members of the Classes.

173.    Defendants Porsche North America and/or Porsche Financial are "lessors" within the meaning of 15 U.S.C. § 1667(3).

174.    Plaintiff and Class Members are "lessees" within the meaning of 15 U.S.C. § 1667(2).

175.    In order to lease to Plaintiff and Class Members the Defeat Device Vehicles, Defendants Porsche North America and/or Porsche Financial entered into a consumer lease within the meaning of 15 U.S.C. § 1667(1) with Plaintiff and Class Members.

176.    Plaintiff's' Class Members' consumer leases were consummated at the time Plaintiff, Class Members signed said documents presented to them by Porsche North America and/or Porsche Financial and the Defeat Device Vehicles were delivered to them.

177.    Defendants Porsche North America and/or Porsche Financial, as lessors, had a duty to make certain financial disclosures as provided by 15 U.S.C. § 1667(a) and (b).

178.    Defendants Porsche North America and/or Porsche Financial intentionally failed to comply with the  requirements of 15 U.S.C. § 1667(a) and (b) by providing Plaintiff, Class Members with consumer leases containing financial disclosures that were meaningless and illusory because they were based on Defendants' pattern of intentional, knowing and fraudulent concealment of the true characteristics of the Defeat Device Vehicles, intentional breach of their Representations and Warranties as to the Defeat Device Vehicles, and the real value of the Defeat Device Vehicles was less than the sale or lease value represented by Porsche North America and/or Porsche Financial.

179.    Plaintiff and Class Members relied on the disclosures Porsche North America and/or Porsche Financial made in consumer leases to execute said documents.

180.    Plaintiff and Class Members suffered damages as a result of Porsche North America's and/or Porsche Financial's meaningless and illusory disclosures because they purchased, financed or leased a vehicle, the value of which was inflated based on the fraudulent

concealments of its true characteristics. Had the disclosures on the lease agreements been accurate, Plaintiff and Class Members would not have leased the Defeat Device Vehicles or would have leased them at a lower price.

181.    As a direct and proximate result of Defendants Porsche North America's and/or Porsche Financial's violations, Plaintiff and Class Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all statutory, compensatory damages, incidental and consequential damages,  punitive damages, attorneys fees and costs, and other damages allowed by law.

### B.    OHIO-SPECIFIC CAUSES OF ACTION

### COUNT XI

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY: OHIO REV. CODE ANN. § 1302.27 (ON BEHALF OF THE OHIO SUBCLASS)

182.    Plaintiff realleges and incorporates all other paragraphs of this Complaint as if fully rewritten herein.

183.    Plaintiff brings this Count on behalf of himself individually and the Ohio Subclass.

184.    The Defeat Device Vehicles are "goods" within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(8).

185.    Plaintiff and the Ohio Subclass Members are "buyers" within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(1).

186.    A warranty that goods shall be merchantable and fit for the ordinary purposes for which such goods are used is implied if the seller is a merchant with respect to goods of that kind. Ohio Rev. Code Ann.  § 1302.27.

187.    Porsche is a "merchant" with respect to motor vehicles and/or their parts, including engines and emission control systems, within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(5).

188.    Porsche impliedly warranted pursuant to Ohio Rev. Code Ann. § 1302.27 that the Defeat Device Vehicles were merchantable, which implied warranty became part of the basis of the bargain when Plaintiff and the Ohio Subclass Members purchased or leased their Defective Vehicles.

189.    Even though not required, Plaintiff and the Ohio Subclass Members have had sufficient direct dealings with Porsche or its agents to establish privity of contract between them.

190.    Porsche breached this implied warranty of merchantability because, among other things, the Defeat Device Vehicles would not have passed without objection in the automotive trade, were not fit for the ordinary purpose in which such goods are used, and were not adequately labeled in that they contained a latent defect causing the Defeat Device Vehicles to not be roadworthy.

191.    Porsche was given notice of their breach of this implied warranty, both before and after the recalls and issues relating to the Defeat Device Vehicles became public, by its direct knowledge of the defects, and complaints received, as well as external investigations conducted by safety regulators. Porsche, however, affirmatively misrepresented and otherwise actively and fraudulently concealed the issues with the Defeat Device Vehicles from Plaintiff and the Ohio Subclass Members, and the public at large, such that Plaintiff and the Ohio Subclass Members did not discover and could not have discovered with due diligence Porsche's breach of this implied warranty until their vehicles were recalled.

1766.0003.3.2

192.    Moreover, although Porsche is now and may continue to recall the Defeat Device Vehicles, it has refused and/or is unable and/or will be unable to meet consumer demand for non-defective vehicles or alternative means of transportation.

193.    Pursuant to Ohio Rev. Code Ann. § 1302.88 and 1302.89(B)(2), Plaintiff and the Ohio Subclass Members have thus sustained injuries and damages as a direct and proximate result of Porsche's breach of the implied warranty of merchantability.

194.    As a direct and proximate result of Porsche's breach, Plaintiff and Ohio Subclass Members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, punitive damages, attorneys' fees and costs, and other damages allowed by law.

## COUNT XII

## BREACH OF EXPRESS WARRANTY: OHIO REV. CODE ANN. § 1302.88 (ON BEHALF OF THE OHIO SUBCLASS)

195.    Plaintiff realleges and incorporates all other paragraphs of this Complaint as if fully rewritten herein.

196.    Plaintiff brings this Count on behalf of himself individually and the Ohio Subclass.

197.    The Defective Vehicles are "goods" within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(8).

198.    Plaintiff and the Ohio Subclass Members are "buyers" within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(1).

199.    Porsche is a "merchant" with respect to motor vehicles and/or their parts, including airbags, within the meaning of Ohio Rev. Code Ann. § 1302.01(A)(5).

200.    Porsche expressly warranted pursuant Ohio Rev. Code Ann. § 1302.26 that the Defeat Device Vehicles were merchantable, which express warranty was part of the basis of the bargain when Plaintiff and the Ohio Subclass Members purchased or leased their Defeat Device Vehicles.

201.    Plaintiff and the Ohio Subclass Members reasonably expected and relied upon Porsche's express warranty when purchasing or leasing the Defeat Device Vehicles, which express warranty became a basis of the bargain of such sale or lease transaction.

202.    Porsche breached this express warranty because, among other things, the Defeat Device Vehicles were not fit for the ordinary purpose in which such goods are used, contained a defect causing the Defeat Device Vehicles to not be roadworthy under Federal, State, and Local laws and regulations, the Defeat Device Vehicles would not have passed without objection in the automotive trade, and were not adequately labeled in that they contained a latent defect causing the Defeat Device Vehicles to not be roadworthy and violated Porsche's Representations and Warranties.

203.    Porsche was given notice of its breach of this express warranty, both before and after the recalls and issues relating to the Defeat Device Vehicles became public, by its direct knowledge of the defects, and complaints received, as well as external investigations conducted by safety regulators. Porsche, however, affirmatively misrepresented and otherwise actively and fraudulently concealed the issues with the Defeat Device Vehicles from Plaintiff and the Ohio Subclass Members, and the public at large, such that Plaintiff and the Ohio Subclass Members did not discover and could not have discovered with due diligence Porsche's breach of this express warranty until their vehicles were recalled.

204. Moreover, Porsche is unable and/or will be unable to meet consumer demand for non-Defective Vehicles or alternative means of transportation.

205. Pursuant to Ohio Rev. Code Ann. § 1302.88 and 1302.89(B)(2), Plaintiff and Ohio Subclass Members have thus sustained injuries and damages as a direct and proximate result of Porsche's breach of the express warranty.

206. As a direct and proximate result of Porsche's breach, Plaintiff and Members of the Ohio Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, punitive damages, attorneys' fees and costs, and other damages allowed by law.

## COUNT XIII

## OHIO CONSUMER SALES PRACTICES ACT
## OHIO REV. CODE ANN. § 1345.01, *ET SEQ.*
## (ON BEHALF OF THE OHIO SUBCLASS)
## [AND 16 C.F.R. §433 *ET SEQ.*]

207. Plaintiff realleges and incorporates all other paragraphs of this Complaint as if fully rewritten herein.

208. Plaintiff brings this Count on behalf of himself individually and the Ohio Subclass.

209. This claim is brought pursuant to Ohio. Rev. Code § 1345.01, *et seq.*, commonly referred to as the Ohio Consumer Sales Practices Act ("CSPA"), on behalf of the Plaintiff and the Ohio Subclass Members.

210. At all times relevant hereto, Plaintiff and the Ohio Subclass Members were/are "consumers" as defined by Ohio. Rev. Code § 1345.01(D), each of whom engaged in consumer transactions with Porsche North America and/or Porsche Financial.

211. At all times relevant hereto, Porsche North America and/or Porsche Financial and/or their agents were "suppliers" as defined by Ohio. Rev. Code § 1345.01(C) in that they solicited and/or effected consumer transactions with Plaintiff and the Ohio Subclass Members.

212. The acts of Porsche North America and/or Porsche Financial as complained of herein are, by virtue of Ohio. Rev. Code § 1345.05 and Ohio. Rev. Code § 1345.09, acts that have been found to be unfair and deceptive by competent courts of Ohio and have been held available for public inspection by the Attorney General of Ohio and/or have been incorporated into the Ohio Administrative Code as unfair and deceptive. These acts include, but are not limited to, failure to honor implied and express warranties, the making and distribution of false, deceptive and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect. *See, e.g.,*; *Celebrezze v. Moore* (April 30, 1987), No. 86CV-02-1297, Ohio Attorney General Public Inspection File No. 10000851; Mason v. Mercedes Benz USA, LLC (OPIF #10002382); State ex rel. Betty D. Montgomery v. Volkswagen Motor Co. (OPIF #10002123); State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc. (OPIF #10002025); Bellinger v. Hewlett-Packard Co., No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077); Borror v. MarineMax of Ohio, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388); State ex rel. Jim Petro v. Craftmatic Organization, Inc. (OPIF #10002347); Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc. (OPIF #10001586); State ex rel. William J. Brown v. Harold Lyons, et al. (OPIF #10000304); Brinkman v. Mazda Motor of America, Inc. (OPIF #10001427); Khouri v. Don Lewis (OPIF #100001995); Mosley v. Performance Mitsubishi aka Automanage (OPIF #10001326); Walls v. Harry Williams dba Butch's Auto Sales (OPIF #10001524); and Brown v. Spears (OPIF #10000403).

213. As a direct and proximate result of Porsche North America's and/or Porsche Financial s violations, Plaintiff and Members of the Ohio Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, punitive damages, attorneys' fees and costs, and other damages allowed by law.

<strong><u>COUNT XIV</u></strong>

<strong><u>AIDING AND ABETTING FRAUD (AS TO PORSCHE FINANCIAL)</u></strong>

214. Plaintiff realleges and incorporates all other paragraphs of this Complaint as if fully rewritten herein.

215. Plaintiff brings this Count on behalf of himself and the Ohio Subclass.

216. Porsche Financial, as an entity wholly owned and controlled by VW, the parent company of Porsche AG, which in turn is the parent company of Porsche North America, is closely related to Porsche North America.

217. As such, it knew or should have known of the premeditated, intentional and carefully devised scheme of VW, Porsche AG and Porsche North America to defraud consumers by marketing and offering for sale or lease and putting into the stream of commerce the Defeat Device Vehicles, and that scheme resulted in violations of the federal and states laws.

218. By financing the purchase or lease of the Defeat Device Vehicles, Porsche Financial provided substantial assistance to VW, Porsche AG and Porsche North America in perpetrating their fraudulent scheme. In fact, Porsche Financial is an integral and critical part of and enabled VW, Porsche AG's and Porsche North America's scheme as the financing or leasing of any Defeat Device Vehicle through Porsche Financial contributes to the gain of all Defendants and increase their profits.

219.    As a result of Porsche Financial's intentional aiding and abetting the fraudulent conduct of VW, Porsche AG and Porsche North America, Plaintiff and Ohio Subclass Members were injured because they purchased, financed and/or leased the Defeat Device Vehicles.

220.    As a direct and proximate result of Porsche Financial's intentional aiding and abetting, Plaintiff and Members of the Ohio Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages,   punitive damages, attorneys fees and costs, and other damages allowed by law.

## COUNT XV

## AIDING AND ABETTING FRAUD (AS TO BOSCH)

221.    Plaintiff realleges and incorporates all other paragraphs of this Complaint as if fully rewritten herein.

222.    Plaintiff brings this Count on behalf of himself and the Ohio Subclass.

223.    Bosch designed and supplied the defeat device to that Porsche incorporated in thousands of Defeat Device Vehicles. As early as 2007, Bosch warned VW, Porsche's parent company that installing and using the software in vehicles that were driven on the road would constitute a criminal offense because the software was designed solely for "internal testing purposed" and not for actual driving conditions

224. When it sold the defeat device to Porsche, Bosch knew that Porsche intended to use the defeat device in the Defeat Device Vehicles because it sold thousands of defeat devices to Porsche for on the road vehicles sold to the public (not for a few test vehicles) in order to evade federal and state emission standards and defraud Plaintiff and Ohio Subclass Members.

225. By selling the defeat device to Porsche with the knowledge that it would be used to defraud United States regulators and consumers, Bosch provided substantial assistance to VW, Porsche AG and Porsche North America in perpetrating their fraudulent scheme. In fact, Bosch is an integral and critical part of and enabled VW, Porsche AG's and Porsche North America's scheme as without Bosch agreeing to conceal the fact that Porsche intended to incorporate the defeat device into the Defeat Device Vehicles and agreeing to supply the defeat devices used in all Defeat Device Vehicles, Bosch contributed to the financial gain of all Defendants and the increase of all of the Defendants' profits.

226. As a result of Bosch's intentional aiding and abetting the fraudulent conduct of VW, Porsche AG, Porsche North American and Porsche Financial, Plaintiff and Ohio Subclass Members were injured because they purchased, financed and/or leased the Defeat Device Vehicles and/or the Extended Warranties.

227. As a direct and proximate result of Bosch's intentional aiding and abetting, Plaintiff and Member of the Ohio Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, punitive damages, attorneys fees and costs, and other damages allowed by law.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against the Defendants, as follows:

    a) An order certifying the proposed Classes, designating Plaintiff as named representatives of the Classes, and designating the undersigned as Class Counsel;

    b) A declaration that the Defeat Device Vehicles are defective;

1766.0003.3.2

c)      A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Defeat Device Vehicles;

d)      An order enjoining Defendants to desist from further deceptive distribution, sales, financing and lease practices with respect to the Defeat Device Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Defeat Device Vehicles to eliminate the illegal defeat devices;

e.)     An award to Plaintiff and Class Members of compensatory, all actual, exemplary, special, and statutory, treble and consequential, damages, including damages related to purchase of maintenance agreements, extended warranties, interest, in an amount to be proven at trial;

f)      An award to Plaintiff and Class Members of punitive damages based on the intentional fraud, misrepresentations and deceit;

g)      An award to Plaintiff and Class Members of treble damages as a result of the RICO Enterprise and associated pattern of racketeering activity;

h)      An award to Plaintiff and Class Members for the return of the purchase price of the Defeat Device Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorneys' fees and costs;

i)      A declaration that the Defendants must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits they received from the sale, financing or lease of the Defeat Device Vehicles, or make full restitution to Plaintiff and Class Members;

j)      A declaration by the Court, pursuant to Ohio Revised Code 1345.09(D), that the Defendants' actions constitute an unfair, deceptive, or unconscionable business practice under Ohio's Consumer Sales Practices Act, R.C. § 1345.01, *et seq.*;

k)      An award of attorneys' fees and costs, as allowed by law;

l)      An order rescinding all retail installment contracts and consumer lease agreements related to the Defeat Device Vehicles and ordering restitution of all amounts paid thereunder;

m)      An award of prejudgment and post-judgment interest, as provided by law;

n)      Leave to amend this Complaint to conform to the evidence produced at trial; and

o)      Such other and further relief as the Court deems appropriate under the circumstances.


## A TRIAL BY JURY IS HEREBY DEMANDED

Dated: November 4, 2015                    STATMAN, HARRIS & EYRICH, LLC

                                    **/s/ Alan J. Statman**
                                    Alan J. Statman (0012045)
                                    Jeffrey P. Harris (0023006)
                                    Sylvie Derrien (0072579)
                                    441 Vine Street
                                    3700 Carew Tower
                                    Cincinnati, Ohio 45202
                                    Phone: (513) 621-2666
                                    Facsimile: (513) 621-4896
                                    E-Mail: ajstatman@statmanharris.com
                                            jharris@statmanharris.com
                                            sderrien@statmanharris.com
                                    *Attorneys for Plaintiff-Ross Vigran*
                                    *and the proposed Classes*

1766.0003.3.2